**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

TAVERES DISHAN JONES, # 290907,      *

                               *

     Petitioner,             *

                               *

vs.                            *    CIVIL ACTION NO. 18-00526-JB-B

                               *

KENNETH PETERS,[1]          *

                               *

     Respondent.            *

<u>**REPORT AND RECOMMENDATION**</u>

Taveres Dishan Jones, an Alabama state prison inmate in the custody of Respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. (Doc. 1). The petition has been referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), S.D. Ala. GenLR 72(a)(2)(R), and Rule 8 of the Rules Governing Section 2254 Cases. The undersigned has conducted a careful review of the record and finds that no evidentiary hearing is required to resolve this case.[2]

---

[1] The Court takes judicial notice of the fact that Kenneth Peters is now the warden of Donaldson Correctional Facility, where Jones is currently incarcerated. Accordingly, the Clerk is **DIRECTED** to substitute Kenneth Peters for Christopher Gordy as the Respondent in this case.

[2] Because Jones filed his federal habeas petition after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The "AEDPA expressly limits the extent to which hearings are permissible, not merely the extent to which they are required." <u>Kelley v. Sec'y for Dep't of Corr.</u>, 377 F.3d 1317, 1337 (11th Cir. 2004). Jones has failed to establish

Having carefully considered Jones' petition (Doc. 1), Respondent's answer and exhibits (Doc. 10), and Jones' response to Respondent's answer (Doc. 11), the undersigned finds that Jones' petition is untimely, that equitable tolling is inappropriate, and that Jones has failed to demonstrate actual innocence. Accordingly, it is **RECOMMENDED** that Jones' federal habeas claims, other than his substantive competency claim, be **DISMISSED with prejudice** as time-barred; that Jones' substantive competency claim be **DENIED** on its merits; that judgment be entered in favor of Respondent and against Jones; and that Jones be granted a certificate of appealability only as to the issue of his entitlement to equitable tolling.

I.   <u>**BACKGROUND**</u>

On August 22, 2013, following a jury trial, Jones was convicted in the Circuit Court of Mobile County, Alabama of four counts of capital murder, including two counts of murder committed during the course of a robbery, one count of murder of two or more persons committed pursuant to one scheme or course of conduct, and one count of murder of an individual under the age of fourteen. (Doc. 10-7 at 122-23). The trial court sentenced Jones to life in

---

that an evidentiary hearing is warranted in this case. <u>See</u> <u>Birt v. Montgomery</u>, 725 F.2d 587, 591 (11th Cir. 1984) (en banc) ("The burden is on the petitioner in a habeas corpus proceeding to establish the need for an evidentiary hearing.").

prison without the possibility of parole. (Doc. 10-1 at 18-19, 21-23).[3]

Jones' trial counsel filed a notice of appeal on August 23, 2013, and the court appointed attorney Glenn Davidson to represent Jones on appeal. (Id. at 73-75). Jones raised a single claim on direct appeal, namely, that the trial court erred in ruling that he had not established a prima facie violation of Batson v. Kentucky, 476 U.S. 79 (1986), after the State used more than half of its peremptory strikes to remove African-American venire members. (Doc. 10-9). In an unpublished memorandum opinion dated June 6, 2014, the Alabama Court of Criminal Appeals affirmed the judgment of the circuit court. (Doc. 10-11). Davidson, Jones' appellate counsel, filed an application for rehearing on June 29, 2014. (Doc. 10-12). The Court of Criminal Appeals overruled the application for rehearing but substituted its June 6, 2014 opinion with another memorandum affirmance dated August 22, 2014. (Doc. 10-13). Jones' counsel then filed a petition for writ of certiorari with the Supreme Court of Alabama on August 25, 2014. (Doc. 10-14). On October 10, 2014, the Supreme Court of Alabama denied certiorari review, and certificates of judgment were issued

---

[3] It was determined that Jones was not eligible to receive a death penalty sentence due to his diagnosis of mild mental retardation. (Doc. 10-1 at 21-23). See Atkins v. Virginia, 536 U.S. 304, 321 (2002) (concluding that "death is not a suitable punishment for a mentally retarded criminal").

by the Supreme Court of Alabama and the Court of Criminal Appeals on that date. (Docs. 10-15, 10-16). Jones did not seek certiorari review in the United States Supreme Court.

More than two years later, on February 10, 2017,[4] Jones filed a *pro se* Rule 32 petition in the Circuit Court of Mobile County.[5] (Doc. 10-17 at 29-36). The State filed a motion to dismiss Jones' Rule 32 petition, and on November 3, 2017, the circuit court entered a detailed order summarily dismissing Jones' petition. (Doc. 10-18 at 28-57; Doc. 10-19 at 22-33).

Jones appealed the circuit court's dismissal of his Rule 32 petition. (Doc. 10-19 at 39-40). His court-appointed counsel filed a no-merit brief and motion to withdraw pursuant to Anders v. California, 386 U.S. 738 (1967). (Doc. 10-20). Upon receipt of the no-merit brief, the Court of Criminal Appeals entered an order permitting Jones to identify all issues he wanted considered on appeal. (Doc. 10-21). Jones filed a brief as directed (Doc. 10-22), and in a memorandum opinion dated April 20, 2018, the Court of Criminal Appeals found that the circuit court had properly

---

[4] Under the mailbox rule, a *pro se* prisoner's petition is deemed filed on the date it is delivered to prison officials for mailing. Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) (per curiam). Absent evidence to the contrary, the date of delivery is assumed to be the date the prisoner signed the motion. Id.

[5] Jones subsequently moved for appointment of counsel, and the circuit court appointed attorney Taft Hughes to represent Jones in his Rule 32 proceedings on May 22, 2017. (Doc. 10-18 at 25-27).

summarily dismissed Jones' claims, and that Jones' newly raised ineffective assistance of appellate counsel claim was not properly preserved for appellate review.   (Doc. 10-23).   The Court of Criminal Appeals overruled Jones' application for rehearing on May 25, 2018.   (Doc. 10-25).   On August 10, 2018, the Supreme Court of Alabama denied certiorari review, and certificates of judgment were issued.   (Docs. 10-27, 10-28).

Jones then filed a petition in this Court seeking habeas corpus relief under 28 U.S.C. § 2254.   (Doc. 1).   The petition is dated August 26, 2018; however, it is posted December 13, 2018 and was docketed by the Clerk's office on December 17, 2018.   (See id. at 12, 37-38).[6]

In his answer to Jones' habeas petition, Respondent contends that it is "unlikely it took four months for the petition to reach this Court" but argues that "using either [an August 2018 or a December 2018] date has no impact" because Jones' habeas petition

---

[6] In his § 2254 habeas petition, Jones appears to raise the following claims: (1) that his procedural due process rights were violated when he was tried, convicted, and sentenced without the trial court making a competency determination; (2) that his substantive due process rights were violated because he was incompetent at the time of his offenses and during his trial; (3) that his sentence of life imprisonment without the possibility of parole was illegal because of his mental retardation; (4) that he was constructively denied counsel for six and a half months between his preliminary hearing and arraignment; (5) that his trial counsel were ineffective for failing to conduct an adequate investigation of the case; and (6) that his trial counsel were ineffective for failing to change his plea to not guilty by reason of mental disease or defect.   (See Doc. 1).

is time-barred by the one-year period of limitation contained in 28 U.S.C. § 2244(d) no matter which of those dates is used. (Doc. 10 at 1, 9-12). Respondent also argues that Jones is not entitled to equitable tolling of the limitations period, and that he has not adequately asserted actual innocence as a gateway to review of his untimely claims. (Id. at 12-17). In response, Jones argues that he is entitled to equitable tolling of the statute of limitations because of his appellate counsel's abandonment of him and his mental retardation. (Doc. 11). The habeas petition has been fully briefed and is ripe for consideration.

## II.   __STANDARD OF REVIEW__

The Court's review of Jones' petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, "the role of the federal courts is strictly limited." Jones v. Walker, 496 F.3d 1216, 1226 (11th Cir. 2007). Specifically, 28 U.S.C. § 2254 provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –-
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254.

Thus, a federal court may grant habeas relief only if the state court arrives at a conclusion contrary to that reached by the United States Supreme Court on a question of law or decides a case differently from the way the United States Supreme Court did on a set of materially indistinguishable facts, or if the state court's decision involves an unreasonable factual determination. Williams v. Taylor, 529 U.S. 362, 405 (2000); Price v. Vincent, 538 U.S. 634, 638-41 (2003) (noting that a federal habeas court will disturb a state court's decision on the merits only if the petitioner shows that the decision was contrary to, or involved an unreasonable application of, clearly established constitutional law as determined by the Supreme Court, or if the decision rested upon an unreasonable factual determination).

"[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington v. Richter, 562 U.S. 86, 103 (2011).

In other words, "if some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied. . . . [T]he deference due is heavy and purposely presents a daunting hurdle for a habeas petitioner to clear." Loggins v. Thomas, 654 F.3d 1204, 1220 (11th Cir. 2011); see also Greene v. Fisher, 565 U.S. 34, 38 (2011) (noting that the AEDPA standard is purposely onerous because "federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction") (citations and internal quotation marks omitted); Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (noting that the AEDPA standard "is a difficult to meet . . . and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal citations and quotation marks omitted).

Accordingly, in evaluating Jones' § 2254 petition, the Court takes great care to abide by the stricture that "[a] federal court may not grant habeas relief on a claim a state court has rejected on the merits simply because the state court held a view different from its own." Hill v. Humphrey, 662 F.3d 1335, 1355 (11th Cir. 2011); see also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1286 (11th Cir. 2012) ("This inquiry is different from determining whether we would decide de novo that the petitioner's claim had

merit."). Having established the proper standard of review, the Court first examines the timeliness of Jones' claims.

### III. <u>ANALYSIS</u>

### A. Untimeliness.

Pursuant to 28 U.S.C. § 2244(d), as amended by the AEDPA, state prisoners seeking a federal habeas corpus remedy must file their habeas corpus petitions within a one-year period of limitation. The statute provides that:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

There is nothing in the record to suggest that subsections (B), (C), or (D) of § 2244(d)(1) apply to any of Jones' claims. Therefore, the timeliness of Jones' habeas petition must be calculated under § 2244(d)(1)(A). Under that subsection, the one-year period of limitation commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Id.   at   § 2244(d)(1)(A); see also Pugh v. Smith, 465 F.3d 1295, 1298 (11th Cir. 2006).

As noted *supra*, Jones was convicted on August 22, 2013. The Alabama Court of Criminal Appeals affirmed his conviction and sentence on direct appeal, and certificates of judgment were issued on October 10, 2014. Jones' conviction and sentence became final on or about January 8, 2015, upon the expiration of the ninety-day period for Jones to seek review in the United States Supreme Court. See Bond v. Moore, 309 F.3d 770, 774 (11th Cir. 2002); Pugh, 465 F.3d at 1299. Accordingly, the period of limitation for Jones to file a federal habeas petition began running on January 8, 2015 and, since no tolling events occurred in the year after Jones' judgment of conviction became final,[7] the limitations period

---

[7] Jones filed his first and only Rule 32 petition in the Mobile County Circuit Court on February 10, 2017. However, that petition had no tolling effect on the federal period of limitation because the limitations period had long since expired. See, e.g., Moore

expired one year later, in January 2016.  Because Jones did not file the instant habeas petition until August 26, 2018, at the earliest, it is untimely.  Thus, unless Jones can demonstrate that he is entitled to equitable tolling or another exception to the statute of limitations, his claims are due to be dismissed as time-barred.

**B.  Equitable Tolling.**

Case law directs that the AEDPA limitations period "may be equitably tolled" on grounds apart from those specified in the habeas statute "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable with diligence."  Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999) (per curiam).  The Eleventh Circuit has stated that:

> Section 2244 is a statute of limitations, not a jurisdictional bar.  Therefore, it permits equitable tolling "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence."  Sandvik, 177 F.3d at 1271.  Equitable tolling is an extraordinary remedy which is typically applied sparingly.

Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000); see also Holland v. Florida, 560 U.S. 631, 645, 649 (2010) ("§ 2244(d) is

---

v. Crosby, 321 F.3d 1377, 1381 (11th Cir. 2003) ("While a 'properly filed' application for post-conviction relief tolls the statute of limitations, it does not reset or restart the statute of limitations once the limitations period has expired.  In other words, the tolling provision does not operate to revive the one-year limitations period if such period has expired.").

subject to equitable tolling in appropriate cases. . . . We have previously made clear that a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing.") (quoting <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005)); <u>Cadet v. Fla. Dep't of Corr.</u>, 853 F.3d 1216, 1225 (11th Cir.), <u>cert. denied</u>, 138 S. Ct. 1042 (2018) ("[T]he reasonable diligence and extraordinary circumstance requirements are not blended factors; they are separate elements, both of which must be met before there can be any equitable tolling.").

Recognizing that his petition is untimely, Jones argues strenuously that he is entitled to equitable tolling because he did not receive the record on appeal and a copy of the memorandum opinion denying his direct appeal from his appellate counsel, Glenn Davidson, "until on or about November 7, 2016. Therefore, he could not file his Rule 32 petition in time pursuant to Rule 32.2(c), Ala. R. Crim. P." (Doc. 1 at 11). Jones argues that, because of his mental retardation, he relied exclusively on Davidson to assert and protect his rights, and that Davidson abandoned him by failing to timely inform him that his direct appeal was over. (Doc. 11 at 2, 4, 7). Jones further contends that he did not reach out to Davidson earlier because other inmates "with more knowledge of the law" than Jones advised him that his appeal would take longer

because his was a capital murder case and that Davidson would forward him all appellate documents once the appeal process was over.   (Id. at 7-8).   Jones maintains that he "showed an appropriate degree of diligence for someone in his situation." (Id. at 3).   Respondent argues that Jones could have discovered the affirmance of his convictions on direct appeal long before he allegedly did if he had exercised any diligence at all, and that Davidson's failure to inform Jones earlier of the result of his direct appeal does not constitute an extraordinary circumstance warranting equitable tolling.   (Doc. 10 at 14).

As noted, Jones contends that Davidson's failure to inform him once his convictions were affirmed on direct appeal and to send him the record on appeal constituted extraordinary circumstances for the purpose of equitable tolling.   A serious instance of attorney misconduct may entitle a habeas petitioner to equitable tolling of the AEDPA limitations period.   See Holland, 560 U.S. at 651-52.

> [A]gency law . . . provide[s] the principles that govern a client's accountability for his attorney's errors . . . . .
>
> Under fundamental principles of agency law, the agency relationship between an attorney and his client can be severed, with the result that the client is not constructively charged with his attorney's knowledge or actions when, for example, the attorney actually abandons his client or purposely acts adversely to his client's interests or commits another serious breach of loyalty to his client. . . .

> An agent is not deemed to have acted adversely to his
> principal's interests simply because he blundered and
> made an unwise, negligent, or grossly negligent mistake
> that harmed those interests. Instead, an agent is deemed
> to have acted adversely to his principal's interests
> only when he acts, or fails to act, for the purpose of
> advancing his own interests or those of a third party.

Cadet, 853 F.3d at 1229. Therefore, "attorney negligence, even gross or egregious negligence, does not by itself qualify as an 'extraordinary circumstance' for purposes of equitable tolling; either abandonment of the attorney-client relationship[8] . . . or some other professional misconduct or some other extraordinary circumstance is required." Id. at 1227 (underlines in original).

The failure of Jones' appellate counsel to inform him earlier of the final appellate decision[9] is not the type of serious misconduct that qualifies as an "extraordinary circumstance" for purposes of equitable tolling. Davidson's actions or omissions do not rise above the level of negligence.[10] See Kitchen v. Danials,

---

[8] Jones asserts that Davidson "abandoned him . . . without any notice" by failing "to notify Jones of the final appellate decision or [send Jones] a copy of the record on appeal until after receiving a October 28, 2016 letter from Jones." (Doc. 11 at 2, 4) (underlines in original).

[9] In a letter to Jones dated January 4, 2017, Davidson confirmed that he did not send Jones correspondence notifying him of the final appellate decision in his case or a copy of the record on appeal until he received an October 28, 2016 letter from Jones. (Doc. 10-18 at 40).

[10] Additionally, "because certiorari with the Alabama Supreme Court is a discretionary review, [Jones] had no Sixth Amendment right to counsel following the first round of direct appeal." See Kitchen v. Danials, 2016 U.S. Dist. LEXIS 116547, at *6-7 n.3, 2016 WL

2016 U.S. Dist. LEXIS 116547, at *6, 2016 WL 4545331, at *3 (N.D. Ala. Aug. 9, 2016) ("[T]he allegation that appellate counsel failed to inform Petitioner that the Alabama Supreme Court had quashed the writ of certiorari and entered a certificate of judgment is not the type of egregious attorney conduct required to apply equitable tolling. Rather, this is a description of mere negligence."), report and recommendation adopted, 2016 U.S. Dist. LEXIS 116031, 2016 WL 4530018 (N.D. Ala. Aug. 30, 2016); Baker v. Bolling, 2018 U.S. Dist. LEXIS 170970, at *10-11, 2018 WL 6274059, at *5 (S.D. Ala. Oct. 2, 2018) ("Bishop's actions do not rise beyond the level of negligence, and therefore do not constitute 'extraordinary circumstances' warranting equitable tolling. Bishop's affidavit states that he had intended to promptly inform Baker of the Alabama Supreme Court's denial of certiorari, and indeed believed that he had, but for whatever reason failed to do so. When Baker contacted him on June 27, 2017, to inquire about the status of his case, revealing his ignorance of the Alabama Supreme Court's action, Bishop sent Baker a copy of the court's order that same day. Although Bishop may have failed to timely notify Baker of the Alabama Supreme Court's ruling, 'he did not

---

4545331, at *3 n.3 (N.D. Ala. Aug. 9, 2016), report and recommendation adopted, 2016 U.S. Dist. LEXIS 116031, 2016 WL 4530018 (N.D. Ala. Aug. 30, 2016); see also Wainwright v. Torna, 455 U.S. 586, 587 (1982) ("[A] criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals or applications for review in [the U.S. Supreme] Court.").

withdraw from representing [Baker], renounce his role as counsel, utterly shirk all of his professional responsibilities to [Baker], or walk away from their attorney-client relationship.'") (citation omitted), report and recommendation adopted, 2018 U.S. Dist. LEXIS 203642, 2018 WL 6272898 (S.D. Ala. Nov. 30, 2018); Webster v. Sec'y for Dep't of Corr., 384 F. App'x 979, 983 (11th Cir. 2010) (per curiam) (holding that equitable tolling did not apply where counsel did not notify petitioner of conclusion of direct appeal when petitioner made only one inquiry about the status of his appeal three years after filing the notice of appeal and did not rely on any affirmative representation that he would be notified).

In this case, the record reflects that Davidson immediately responded to Jones' October 28, 2016 letter[11] requesting documents regarding his appeal by mailing all requested documents in his possession to Jones and emailing the Clerk to request that she send Jones a printed copy of the entire record on appeal on the same day that he received Jones' letter. (Doc. 10-18 at 40-42). Thus, like the attorney in Baker, supra, Davidson "did not withdraw from representing [Jones], renounce his role as counsel, utterly shirk all of his professional responsibilities to [Jones], or walk

---

[11] Jones attaches to his response the affidavit of prison writ writer Earnest Lee Walker, Sr., who avers that he wrote Davidson on Jones' behalf and that he has personally prepared and filed all of Jones' pleadings in state and federal court. (Doc. 11-1 at 1-2).

away from their attorney-client relationship." See Cadet, 853 F.3d at 1234.   In view of Davidson's prompt response to Jones' inquiry, Jones cannot establish that the belated notification that he received regarding the conclusion of his appeal was "both beyond his control and unavoidable even with diligence." See Sandvik, 177 F.3d at 1271.   Indeed, had Jones exercised *any* diligence or curiosity about the status of his appeal, he could have discovered the affirmance of his judgment on appeal well within the Rule 32 limitations period.

Jones argues that he exercised reasonable diligence under the circumstances because he is mentally retarded and relied on the advice of "other inmates with more knowledge of the law than I did that because my case was a cap[it]al murder case my appeal would take longer and once the appeal process was over my attorney would forward me the record on appeal; all briefs; opinions, etc." (Doc. 11 at 7-8).   Jones asserts that only after meeting "pro se litigator Earnest Lee Walker and after talking with [him] about my case" did he allow Walker to write Davidson on his behalf in October 2016.   (Id. at 8).   The letter resulted in Davidson notifying Jones that his direct appeal had been denied.

With respect to Jones' allegation that he did not check on the status of his appeal because he relied on the advice of other inmates regarding the duration of his appeal and the documents his attorney would send him at its conclusion, "[a] petitioner's

reliance on the assistance and/or erroneous advice of an inmate clerk fails to establish extraordinary circumstances necessary to excuse the untimely filing of a petition." Cutts v. Jones, 2009 U.S. Dist. LEXIS 7150, 2009 WL 230091, at *7 (M.D. Ala. Jan. 30, 2009).  Thus, Jones' failure to make any inquiry as to the status of his appeal until late October 2016 cannot be excused because he allegedly relied on advice from fellow inmates that the appellate process would be longer in a capital murder case and that he would receive documents from Davidson upon its conclusion.

Jones' conclusory assertion that his reliance on his attorney and on the advice of allegedly more learned inmates constituted reasonable diligence in light of his mental retardation is likewise unavailing.  In some circumstances, a person with a substantial mental illness, such as mental retardation, may be granted equitable tolling of the limitations period.  See Hunter v. Ferrell, 587 F.3d 1304 (11th Cir. 2009).  However, a mental impairment or low IQ are not *per se* reasons to toll the statute of limitations.  Lawrence v. Florida, 421 F.3d 1221, 1227 (11th Cir. 2005), aff'd, 549 U.S. 327 (2007).  Rather, a petitioner must "establish a causal connection between his alleged mental capacity and his ability to file a timely petition." See id. at 1226.  "[A] petitioner must show more than that it is difficult for him to understand and act upon his legal rights; rather he must show that he was incapable of preparing and filing a federal habeas petition

or post-conviction motion any earlier than he did." Moore v. Bryant, 2006 U.S. Dist. LEXIS 78768, at *7, 2006 WL 3091530, at *2 (M.D. Fla. Oct. 30, 2006).

Here, the evidence shows that Jones was evaluated prior to his trial by Doug McKeown, Ph.D., a clinical and forensic psychologist. Dr. McKeown conducted a mental status examination and administered a Wechsler Adult Intelligence Scale, Fourth Edition, which yielded a Full Scale IQ score of 57. (Doc. 10-17 at 75). Dr. McKeown diagnosed Jones with mild mental retardation and noted "some suggestion of possibly slightly higher adaptive living scores but not to the extent that they would reflect functioning above the range of mental retardation." (Id.).

Dr. McKeown also conducted evaluations of Jones' competency to stand trial and his mental state at the time of his offenses. (Id. at 75-78). With regard to the former, Jones demonstrated a fully reasonable understanding and appreciation of the charges and possible penalties he was facing, an adequate ability to comprehend court procedure and behavior, an ability to disclose some pertinent information and details about the alleged offenses, an awareness of the consequences of pleas of guilt or innocence, and an ability to understand an explanation of a mental state defense. (Id. at 76-77). Dr. McKeown noted that Jones demonstrated the ability to interact and relate to defense counsel, provide some assistance in challenging prosecution witnesses, and testify in a relevant

fashion.  (Id. at 77).  Thus, he opined that Jones was competent
to stand trial.  (Id.).  As to Jones' mental state at the time of
the offenses, Jones provided some details as to his intent and the
events at the time of his offenses, and Dr. McKeown concluded that
Jones was sufficiently capable of understanding and appreciating
appropriate and inappropriate behavior at the time of his offenses.
(Id. at 77-78).

     Neither of Jones' trial attorneys challenged his competency
or ability to communicate with or assist them in his defense.
Indeed, during Jones' Rule 32 proceedings, Jason Darley, second
chair defense counsel during Jones' capital murder trial, executed
an affidavit in which he stated:

> Through the course of representation, Mr. Jones always
> seemed to understand perfectly what he was charged with,
> why he was charged, that the state viewed him as the
> main shooter and that his co-defendants were, in some
> form cooperating.  He also seemed to understand
> counsels' roles, what our defenses were and was always
> able to communicate and assist in his defense.  No
> conduct by Jones at any time of the representation ever
> gave indication that his competency at the time of the
> offense or while I represented him was in question.

(Doc. 10-18 at 55).

     Moreover, although Jones' writ writer conclusorily asserts
that he was able to "immediatel[y] notice [Jones'] intellectual
disability" (see Doc. 11-1 at 1), the record reflects that Jones
is able to meaningfully communicate with the writ writer about his
case and provide assistance and information, such as the identity

of his appellate counsel.  The record also reflects that prior to meeting his current writ writer, Jones was able to communicate with other *pro se* inmate litigators about his case.  (<u>See</u> Doc. 11 at 7-8; Doc. 11-1 at 1).  And, Jones' filings reflect that he was aware that a direct appeal had been filed on his behalf and that attorney Davidson was representing him in the appeal.  The filings also demonstrate that despite his limited IQ, Jones had the ability, through other inmates or family members,[12] to inquire and learn about the status of his appeal within the limitations period.  <u>See</u> <u>Joshua v. Estes</u>, 2014 U.S. Dist. LEXIS 185301, at *10, 2014 WL 11125147, at *4 (N.D. Ala. Oct. 16, 2014) ("Joshua would have been able, even if illiterate and of limited IQ, to seek help from other inmates, to inquire about his options for further 'appeal,' and to exercise some diligence in asserting his essential claim . . . ."), <u>report and recommendation adopted</u>, 2016 U.S. Dist. LEXIS 22332, 2016 WL 741985 (N.D. Ala. Feb. 24, 2016).

Although Jones may have required the assistance of others to draft letters and pleadings for him, the same can be said for many habeas petitioners who have *no* mental impairments, such as illiterate prisoners and non-English speakers.  Indeed, "reliance on others due to educational or other limitations is not an uncommon occurrence for those seeking habeas relief and cannot

---

[12] Jones' mother was present at his trial and proffered testimony on his behalf.  (Doc. 10-6 at 199-200; Doc. 10-7 at 1-5).

establish justification for equitable tolling." <u>Rhodes v. Philben</u>, 2016 U.S. Dist. LEXIS 114096, at *7, 2016 WL 4491867, at *3 (M.D. Ga. Apr. 8, 2016), <u>report and recommendation adopted</u>, 2016 U.S. Dist. LEXIS 113675, 2016 WL 4492853 (M.D. Ga. Aug. 25, 2016); <u>see also</u> <u>Joshua</u>, 2014 U.S. Dist. LEXIS 185301, at *11, 2014 WL 11125147, at *4 (noting that "illiteracy is not considered an extraordinary circumstance that excuses the time requirements"); <u>DeLeon v. Fla. Dep't of Corr.</u>, 470 F. App'x 732, 734 (11th Cir. 2012) (per curiam) ("An inability to understand English does not constitute extraordinary circumstances justifying equitable tolling.").

As explained above, Jones' assertion that Davidson's failure to inform him earlier of the conclusion of his direct appeal is an "extraordinary circumstance" sufficient to justify equitable tolling is without merit. Nor does Jones' diagnosis of mild mental retardation qualify as an extraordinary circumstance because the record reflects that Jones had the ability to inquire about the status of his appeal but simply failed to exercise any diligence in obtaining information about his direct appeal or possible other post-conviction relief until long after the expiration of the limitations period. Jones' pleadings demonstrate that his own lack of vigilance, and reliance on questionable advice from other inmates, rather than his limited IQ, were the primary causes of his late filing.

In addition, Jones cannot satisfy the second element of equitable tolling because, even after considering his unique circumstances, limitations, and abilities, he failed to exercise reasonable diligence. As discussed above, the record shows that Jones was competent, communicative, able to provide assistance and information to others in furtherance of his claims and defenses, and capable of a basic understanding of the judicial process. Thus, his failure to exercise *any* diligence for approximately two years after the conclusion of his direct appeal cannot be considered reasonable under the circumstances, even after allowing for his mental limitations. Stated simply, the record is clear that his untimely filing was not caused by extraordinary circumstances that were "both *beyond his control* and *unavoidable even with diligence*." See Sandvik, 177 F.3d at 1271 (emphasis added). Indeed, the record reflects that the opposite is true. Accordingly, Jones has failed to demonstrate that he qualifies for equitable tolling of the limitations period.

   **C.   Actual Innocence.**

The AEDPA's statute of limitations may be overcome by a credible showing by the petitioner that he is actually innocent. McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). To successfully assert actual innocence as a gateway to review of time-barred claims, a habeas petitioner is required "(1) to present new reliable evidence . . . that was not presented at trial, and (2)

to show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt in light of the new evidence." Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012) (per curiam) (internal citations and quotation marks omitted). This "standard is demanding and permits review only in the 'extraordinary' case." House v. Bell, 547 U.S. 518, 538 (2006) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).

In his response to Respondent's answer, Jones states that his "actual innocence claim is being develope[d] with ongoing investigation with possible [affidavits] from alleged co-defendants an[d] when fully developed will be pr[e]sented later." (Doc. 11 at 6). This is plainly insufficient to establish actual innocence, as Jones has produced no new evidence whatsoever, much less reliable evidence. The Court notes that Jones himself admitted to Dr. McKeown that he participated in the armed home invasion robbery that resulted in the death of two of the home's residents, a thirteen-year-old boy and his grandfather, although he denied intent to commit murder and denied knowledge of who shot the victims. (See Doc. 10-17 at 77). In addition, the Court has reviewed the record of Jones' trial, where the evidence of Jones' guilt was overwhelming. Therefore, Jones has unquestionably

24

failed to make the requisite showing of actual innocence to overcome § 2244(d)'s limitations period.

**D.   Substantive Competency.**

Jones' assertion that he "was tried, convicted and sentenced while incompetent at the time of his offenses and trial" (Doc. 1 at 17) is a substantive competency claim.   See Medina v. Singletary, 59 F.3d 1095, 1106 (11th Cir.), cert. denied, 517 U.S. 1247 (1996) ("A petitioner may make a substantive competency claim by alleging that he was, in fact, tried and convicted while mentally incompetent.").   In Medina, the Eleventh Circuit held that a prisoner's "substantive competency claim that he was tried while incompetent . . . is not subject to procedural default and must be considered on the merits."   Id. at 1111.

Some district court judges in this circuit have interpreted the holding in Medina to mean that substantive competency claims are also not subject to U.S.C. § 2244(d)'s time bar.   See Al-Ameen v. Woodall, 2013 U.S. Dist. LEXIS 70263, 2013 WL 2149627, at *1 n.1 (M.D. Ala. May 17, 2013) ("[S]ubstantive competency claim . . . is not subject to procedural default [*or time limitations*] and must be considered on the merits.") (quoting Medina, 59 F.3d at 1111) (brackets added to quote in original) (emphasis added); Cargill v. Alabama, 2020 U.S. Dist. LEXIS 105639, at *13-16, 2020 WL 3260501, at *6 (N.D. Ala. May 4, 2020) (considering petitioner's substantive competency claim on the merits despite the fact that

her habeas petition was untimely filed), report and recommendation adopted, 2020 U.S. Dist. LEXIS 105345, 2020 WL 3259007 (N.D. Ala. June 16, 2020).

Others have declined to extend the holding in Medina. See Escobedo v. U.S., 2012 U.S. Dist. LEXIS 170375, at *4-5, 2012 WL 5989770, at *1 (M.D. Fla. Nov. 30, 2012) ("Although Escobedo correctly asserts that in this circuit 'substantive competency claims generally cannot be procedurally defaulted', this is not a circumstance where Escobedo defaulted his substantive competency claim, for example, by failing to raise the claim on direct appeal. Instead, Escobedo simply failed to file a timely § 2255 motion. Escobedo has cited no authority, and this Court is not aware of any authority, which stands for the proposition that substantive competency claims are exempt from the one-year limitation period.") (internal citation omitted); Sanders v. Forniss, 2018 U.S. Dist. LEXIS 116664, at *2-3, 2018 WL 3420803, at *1 (M.D. Ala. July 13, 2018) ("The Medina court did not address § 2244(d), in part because the Eleventh Circuit decided Medina before Congress passed AEDPA. . . . And while it does seem to be well-settled law that a substantive competency claim cannot be procedurally defaulted, the Eleventh Circuit has at least implicitly held that substantive competency claims can be time barred under § 2244(d), see Lawrence v. Florida, 421 F.3d 1221, 1225-27 (11th Cir. 2005) (applying § 2244(d) to a substantive competency claim). . . . In

26

short, Mr. Sanders's substantive competency claim is subject to §
2244(d)'s one-year statute of limitations."); see also Nettles v.
Horton, 2018 U.S. Dist. LEXIS 29262, at *6-7, 2018 WL 1035721, at
*3 (E.D. Mich. Feb. 23, 2018) ("Although the Tenth and Eleventh
Circuits have held that a substantive competency claim cannot be
procedurally defaulted, the Supreme Court has not adopted this
view and the Sixth Circuit has held that a substantive competency
claim is subject to the procedural default rule.  Petitioner's
substantive competency claim is subject to the statute of
limitations.") (internal citation omitted), certificate of
appealability denied, 2018 WL 6011669 (6th Cir. June 21, 2018),
cert. denied, 139 S. Ct. 1166 (2019).

In light of the mixed authority interpreting the Eleventh
Circuit's holding in Medina, and in the interest of caution, the
undersigned will consider the merits of Jones' substantive
competency claim.

In its order summarily dismissing Jones' Rule 32 petition,
the circuit court found that Jones' substantive due process
competency claim was without merit. (Doc. 10-19 at 26).  The court
stated:

> The only evidence offered by the Petitioner is his below
> average IQ score.  Neither low intelligence, mental
> deficiency, nor bizarre, volatile, and irrational
> behavior can be equated with mental incompetence to
> stand trial. *See* Connally v. State, 33 So.3d 618, 621
> (Ala. Crim. App. 2007), quoting Medina v. Singletary, 59
> F.3d 1095, 1107 (11th Cir. 1995).  Proof of the accused

incompetency to stand trial involves more than simply showing that the accused has mental problems.  Thomas v. State, 766 So.2d 860, 881 (Ala. Crim. App. 1998), aff'd 766 So.2d 975 (Ala. 2000), overruled on other grounds by Ex parte Taylor, 10 So.3d 1075 (Ala. 2005).

> The test for determining competency to stand trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

Nicks v. State, 783 So.2d 895, 909 (Ala.Crim.App. 1999). See also Ala. R. Crim. P. 11.1.

The Petitioner cites the report prepared by Dr. Dough [sic] McKeown in support of his claim that he was incompetent.  But the report cited by the Petitioner does not support his claim.  Writing about the Petitioner's competency to stand trial Dr. McKeown concluded:

> This examiner is of the opinion that the defendant is capable of assisting defense counsel and also capable of assuming the role of a defendant in a judicial proceeding.

Petitioner's Exhibit C and State's Exhibit 4 at 7.  As it relates to the Petitioner's mental state at the time of the offense Dr. McKeown concluded:

> Overall, no information exists to suggest that the defendant was suffering from a severe mental disease or defect in the time frame associated with the current charges and no information exists to suggest that he would have lacked the ability to appreciate the nature and quality of his actions and behavior during that time.

Id. at 7.  The Petitioner claims that there was a reasonable and bona fide doubt as to his mental

> competency.  The evidence cited by him, and quoted above,
> refutes that conclusion.

(Doc. 10-19 at 26-27).[13]

There is a "firmly established" substantive due process right not to be tried while mentally incompetent.  James v. Singletary, 957 F.2d 1562, 1569 (11th Cir. 1992).  "This incompetency claim invokes the Due Process Clause of the Fourteenth Amendment, which for some time has been interpreted as prohibiting states from trying and convicting a mentally incompetent defendant."  Id.  A defendant is competent to stand trial if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and [if] he has a rational as well as factual understanding of the proceedings against him."  Dusky v. United States, 362 U.S. 402, 402 (1960).  "[N]either low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial."  Medina, 59 F.3d at 1107 (citation omitted).

A petitioner raising a substantive competency claim "is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence."  James, 957 F.2d at 1571.  A petitioner is entitled to an

---

[13] In its memorandum opinion affirming the circuit court's dismissal of Jones' Rule 32 petition, the Court of Criminal Appeals included no discussion of Jones' substantive competency claim. (See Doc. 10-23).

evidentiary hearing on a substantive competency claim only if he or she "presents clear and convincing evidence to create a real, substantial and legitimate doubt as to his or her competency." Id. at 1573 (citations and internal quotation marks omitted). "The standard of proof is high. The facts must positively, unequivocally and clearly generate the legitimate doubt." Adams v. Wainwright, 764 F.2d 1356, 1360 (11th Cir.), cert. denied, 474 U.S. 1073 (1986) (citation and internal quotation marks omitted).

Neither Jones' submissions nor the record as a whole present any facts raising a "real, substantial and legitimate doubt" as to Jones' mental competency to stand trial and be sentenced. See id. As discussed supra, Dr. McKeown examined Jones and found him to be competent, and Jones' own trial attorney executed an affidavit attesting to Jones' competence. Further, Jones presents no facts to support the inference that he was mentally incompetent at the time of his offense, and Dr. McKeown concluded that Jones was sufficiently capable of understanding and appreciating appropriate and inappropriate behavior at that time.[14] Apart from his conclusory assertion that he was incompetent at the time of his

---

[14] In order to prevail on a claim of mental incompetency at the time of the offense (i.e., an affirmative defense of insanity), a defendant is required to prove by clear and convincing evidence that "at the time of the commission of the acts constituting the offense, the defendant, as a result of severe mental disease or defect, was unable to appreciate the nature and quality or wrongfulness of his acts." See Williams v. Allen, 598 F.3d 778, 789 (11th Cir. 2010) (quoting Ala. Code § 13A-3-1).

offense and trial, which he does not elaborate on and which is affirmatively contradicted by the record, Jones has presented nothing to the Court that would create any question as to his competence. Accordingly, Jones is not entitled to federal habeas relief on his substantive competency claim.

## IV. **CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a) of the Rules Governing 2254 Cases. The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2).

When a habeas petition is dismissed on procedural grounds without reaching the merits of any underlying constitutional claim, a certificate of appealability "should issue [only] when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural

ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). When a habeas petition is denied on the merits of the underlying constitutional claims, a certificate of appealability should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (citation and internal quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

In the instant case, Jones' federal habeas claims are clearly untimely, and he has failed to make a sufficient showing of "actual innocence" of the offenses for which he was convicted to overcome the time bar. See Schlup, 513 U.S. at 327. However, after consideration of Jones' specific circumstances, including his diagnosis of mental retardation and his appellate counsel's apparent failure to timely inform him of the conclusion of his appeal, the undersigned finds that jurists of reason could find it debatable whether this Court was correct in its procedural ruling as to the following issue:

> Whether, in light of Jones' diagnosis of mental
> retardation, he was entitled to equitable tolling
> between the date on which his conviction and sentence
> became final and the date on which he received
> correspondence from his appellate counsel regarding the
> outcome of his direct appeal?

With regard to his substantive competency claim, Jones has failed to show that the state courts rendered decisions that were either contrary to, or an unreasonable application of, clearly established federal law, see 28 U.S.C. § 2254(d)(1), or were based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d)(2). Accordingly, the undersigned submits that no reasonable jurist could find it debatable whether Jones' substantive competency claim should be denied. As a result, Jones is entitled to a certificate of appealability only as to the specific procedural issue identified herein.

### V.   CONCLUSION

For the reasons set forth above, the undersigned **RECOMMENDS** that Jones' claim that he was tried, convicted, and sentenced while mentally incompetent be **DENIED** on its merits, that Jones' other claims be **DISMISSED with prejudice** as time-barred, and that judgment be entered in favor of Respondent and against Petitioner Taveres Dishan Jones. It is further recommended that the Court find that Jones is entitled to a certificate of appealability only

as to the issue of his entitlement to equitable tolling, as set forth above.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by

reference or refers to the briefing done by the Magistrate Judge is not specific.

      **DONE** this **15th** day of **April, 2021.**

                                      **/s/ SONJA F. BIVINS**
                         **UNITED STATES MAGISTRATE JUDGE**